**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Alexa Rhey Sharpe,** | ) | **CASE NO. 1:20 CV 2732** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Commissioner of Social Security,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**Introduction**

This matter is before the Court upon the Report & Recommendation of Magistrate Judge Darrell A. Clay recommending that the decision of the Commissioner be affirmed. (Doc. 20). Plaintiff Alexa Rhey Sharpe filed objections. (Doc. 21). This is a child disability insurance benefits case. For the following reasons, this Court ACCEPTS the Report & Recommendation and AFFIRMS the decision of the Commissioner.

**Facts**

Plaintiff filed this lawsuit seeking review of the Commissioner's decision denying Plaintiff's claim for child disability insurance benefits. Plaintiff originally filed for benefits on

1

February 12, 2019, alleging a disability onset date of February 25, 1999. She claims disability based on autism spectrum disorder and depressive disorder.

The Administrative Law Judge ("ALJ") denied Plaintiff's claim, finding that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels" so long as the work involved only simple, repetitive tasks requiring only superficial interaction with others. The ALJ also concluded that the work could not involve negotiating with, directing, instructing, or persuading co-workers, and could not involve interacting with the public. Based on this RFC, the ALJ determined that Plaintiff could perform several occupations available in the national economy: housekeeping, cleaning, and dining room attendant. As such, the ALJ concluded that Plaintiff was not disabled any time prior to attaining age 22.

Plaintiff requested review by the Appeals Council, which denied review on Oct. 6, 2020, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981.

Plaintiff timely filed this action, seeking review of the Commissioner's decision to deny benefits. She raised two arguments before the Magistrate Judge: (1) the ALJ lacked authority to decide her case because Commissioner Andrew Saul, from whom the ALJ drew his authority, was unconstitutionally appointed; and (2) the ALJ failed to appropriately analyze her ability to socialize with others.

The government admits that Commissioner Saul's appointment violated the separation of powers because the President could only remove him for cause. The government maintains, however, that Plaintiff must — and did not — show harm stemming from that violation. Furthermore, the government argues that substantial evidence supported the ALJ's determination of the severity of Plaintiff's impairments.

The Magistrate Judge, in his Report & Recommendation, concluded that Plaintiff failed to show a "specific, personal harm" caused by the separation of powers violation. The Magistrate Judge also concluded that the ALJ appropriately weighed Plaintiff's social limitations in assessing her RFC. As such, the Magistrate Judge recommends that this Court affirm the decision of the Commissioner.

Plaintiff filed two objections. (Doc. 21).

**Standard of Review**

When objections are made to a Magistrate Judge's Report and Recommendation, the district court reviews the objection *de novo*. Federal Rule of Civil Procedure 72(b) provides in pertinent part:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended decision; receive further evidence; or return the matter to the magistrate judge with instructions.

As stated in the Advisory Committee Notes: "The term 'de novo' signifies that the magistrate's findings are not protected by the clearly erroneous doctrine, but does not indicate that a second evidentiary hearing is required." (*citing United States v. Raddatz*, 447 U.S. 667 (1980)).

**Analysis**

In the matter now before the Court, Plaintiff renews her argument that the ALJ lacked authority to resolve her disability case because the ALJ's authority derived from a Commissioner subject to an unconstitutional removal provision. She also argues that the ALJ should have concluded that Plaintiff required "accommodated" work, based on her alleged need of a job

3

coach. Plaintiff maintains that such accommodations would render her unable to perform substantial gainful activity.

### 1. Separation of Powers

Plaintiff's primary argument is that remand is necessary to correct a constitutional defect. She asserts that the ALJ in her case lacked proper authority because the ALJ derived that authority from Commissioner Saul, who was subject to an unconstitutional removal provision. That provision, 42 U.S.C. § 902(a), protected the Commissioner from removal except in cases of "neglect of duty or malfeasance in office." The government agrees that Commissioner Saul was subject to an unconstitutional removal provision under *Seila Law* because the President must be able to remove the Commissioner at will. Instead, the government argues that remand is unnecessary under *Collin v. Yellen* because Plaintiff fails to show harm resulting from the unconstitutional removal provision.

In *Seila Law*, the Supreme Court held that for-cause removal protections placed upon the Director of the Consumer Financial Protection Bureau violated the separation of powers, because the President must be able to remove officers at will. *Seila Law v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197 (2020). The Court in *Collins v. Yellen* extended *Seila Law* to for-cause removal restrictions on the Director of the Federal Housing Finance Agency. 141 S. Ct. 1761, 1783 (2021).

But, where remedies are concerned, the Court distinguished between cases involving unconstitutional *appointments* and cases involving properly appointed officers whose *removal protections* were unconstitutional. *Id.* at 1788. An unconstitutionally appointed officer would lack authority to act, but a constitutionally appointed officer with for-cause removal protection

4

still acts with proper authority. *Id.*; *id.* at n.23 ("[T]he unlawfulness of [a] removal provision does not strip [an officer] of the power to undertake the other responsibilities of his office."). When a properly appointed officer has for-cause removal protections, a party may still be entitled to retrospective relief, but the Court held that the party must show that the removal provision inflicted harm. *Id.* at 1788. Action taken by an unconstitutionally appointed officer, by contrast, would require remand. *Id.* (citing *Lucia v. S.E.C.*, 139 S. Ct. 2044, 2055 (2018) (remedy for unconstitutionally appointed ALJ is a new hearing)). In *Collins*, the Court remanded on the issue of harm to determine whether shareholders could establish harm stemming from the unconstitutional removal provision. *Id.* at 1788 89. The Court offered hypothetical ways that the shareholders could show harm: evidence that the President attempted to remove a director but was prevented from doing so by court order, or a statement by the President showing that he would remove a director if the removal protection were not present. *Id.* at 1789.

Here, the government admits that Commissioner Saul was subject to an unconstitutional removal provision, 42 U.S.C. § 902(a). Under *Seila Law* and *Collins*, then, the question becomes what remedy, if any, is appropriate. Plaintiff seeks remand for a new hearing on the basis that the ALJ lacked authority entirely to hear her case, because Social Security regulations explain that ALJs derive authority from the Commissioner. "The primary issue . . . is that Mr. Saul had no constitutionally valid authority to delegate to this ALJ." (Doc. 21 at 450).

The government argues that Commissioner Saul had full authority to act because he was constitutionally appointed; the error is in his removal provision, not his appointment.[1] In the

---

[1] The Report & Recommendation erroneously states that "[t]he Commissioner concedes that former Commissioner Saul's *appointment* violated the separation of powers and was constitutionally defective." (Doc. 20 at 15) (emphasis added). The government did not concede an

5

government's view, *Collins* requires a showing of actual harm when an officer is subject to an unconstitutional removal provision, and Plaintiff failed to show such harm. The Court agrees that Plaintiff is not entitled to relief.

The Supreme Court made clear in *Collins* that a plaintiff who was subjected to an officer's decision where that officer was protected by an unconstitutional removal provision, will not automatically be entitled to relief. The Court explained that *Seila Law* had ordered a remand to decide whether the challenged action "had been ratified by an Acting Director who was removable at will by the President." *Collins v. Yellen*, 141 S. Ct. 1761, 1788. The Court went on to discuss ways that plaintiffs could be harmed by an unconstitutional removal provision. *Id.* at 1789 ("[I]t is still *possible* for an unconstitutional [removal] provision to inflict compensable harm.") (emphasis added). Ultimately, the *Collins* Court remanded to explore harm. *Id.*

Lower courts have interpreted the *Collins* " compensable harm" requirement to mean that a party must show a "link . . . between the removal provision and [the plaintiff's] case" such that the harm is "particularized to [the Plaintiff]." *See Kaufmann v. Kijakazi*, 2022 WL 1233238, at * 5 (9th Cir. 2022). As explained above, *Collins* gave several such examples, such as proof that the President tried to remove a particular officer but was prevented from doing so by a court order. *Kaufmann* provided other hypotheticals, such as the President taking special interest in a

---

> error in Commissioner Saul's appointment. The government noted that it is the *removal provision* that contains an error because it violates the constitutional separation of powers. The Court agrees; *Collins v. Yellen* makes clear that these are two separate issues. 141 S. Ct. 1761, 1787 (explaining *Seila Law* officers had been "properly appointed" even though "the statute unconstitutionally limited the President's authority to *remove* the confirmed [officers]"). The Magistrate Judge's reasoning, however, correctly analyzes the constitutional error. To the extent that the Report and Recommendation mentions an appointment error, it is hereby modified to discuss an error in the removal provision.

plaintiff's case or the Commissioner directing the Appeals Council to "decide her case in a particular way because of the statutory limits on the President's removal authority." *Id.*

The government points to no fewer than thirty cases wherein lower courts have held that the unconstitutional removal provision protecting the Commissioner of Social Security did not cause compensable harm. (Doc. 22 at 545 n.2). Those cases, relying on *Collins,* consistently find that plaintiffs fail to show a nexus between the removal provision and the adverse decision in their benefits case.[2] *See, e.g.*, *Crawford v. Comm'r of Soc. Sec.*, 2021 WL 5917130, at *8 (S.D. Ohio Dec. 14, 2021), *report and recommendation adopted by* 2022 WL 219864 (S.D. Ohio Jan. 25, 2022).

Plaintiff's sole rebuttal case, *Tafoya v. Kijakazi*, merely held that a plaintiff had standing to litigate her constitutional challenge to the removal provision. 551 F. Supp. 3d 1054, 1062 (D. Colo. 2021). Indeed, the court expressed doubt that the plaintiff would later succeed on the merits. *Id.* at 1059 ("While ultimately, the righteousness *vel non* of her arguments on the merits may gain plaintiff little, if anything, the question before me is one of standing, and thus does not implicate the merits.").

Plaintiff makes no argument that she suffered a particularized harm as a result of the unconstitutional removal provision. She does not argue that the President took interest in her case, or that the Commissioner acted in a particular way because he knew that he could only be removed for cause. She argues solely that the ALJ lacked authority to decide her case because the

---

[2] Justice Kagan predicted such a result in her *Collins* concurrence: "I doubt the mass of SSA [Social Security Administration] decisions which would not concern the President at all would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference." *Collins v. Yellen*, 141 S. Ct. 1761, 1802 (2021) (Kagan, J., concurring).

7

Commissioner similarly lacked authority. But this argument conflates an error in the Commissioner's appointment—which would have deprived the Commissioner of authority to act—with an error in the removal provision, which does not deprive the Commissioner of authority. *Collin v. Yellen*, 141 S. Ct. 1761, 1788 (2021). The Court concludes that Plaintiff, having failed to allege a particularized injury caused by the removal provision, is not entitled to remand for a new hearing.[3]

2. **Opinions**

In her second objection, Plaintiff appears to argue that the ALJ erred in evaluating several opinions in the record. She argues that the ALJ should have concluded, based on the evidence, that Plaintiff needs a job coach and would thus not be able to work in a sustained manner. The government responds that Plaintiff's objection "provides no reasoning for how [the Report & Recommendation] was flawed" and thus the objection is waived. In the alternative, the government argues that substantial evidence supports the ALJ's conclusion.

Although the Court strains to understand Plaintiff's objection, she appears to argue that the ALJ inappropriately weighed the opinion of Dr. Zeck, who diagnosed Plaintiff with autism. It is well-settled, however, that "[i]ssues adverted to in a perfunctory manner, without some effort to develop an argument, are deemed forfeited." *Bard v. Brown Cty.*, 970 F.3d 738, 750 (6th Cir. 2020) (citation and quotation omitted). Plaintiff does not describe how this opinion should have been analyzed and does not reference it again after saying that it was "erroneously" considered. (Doc. 21 at 540–41). Because Plaintiff provides no analysis or argument for Dr. Zeck's opinion, the Court concludes that this portion of her objection is forfeited.

---

[3] The Court declines to reach the government's argument that the ALJ had full authority to act because he was appointed by an Acting Commissioner subject to at-will removal.

Plaintiff also argues that the ALJ erred in evaluating the opinion of her autism job coach, Kelly Bylewski. The ALJ noted that Bylewski believed Plaintiff could work but required "practice and repetition." (Doc. 13 at 100). It appears that plaintiff is claiming she needs a job coach, which would somehow constitute a need for "accommodated" work. According to plaintiff, a finding that plaintiff requires "accommodated work," equates to an automatic finding that plaintiff is disabled.

Again, the Court struggles to understand Plaintiff's argument. To the extent that Plaintiff believes the ALJ should have treated Bylewski's opinion as more or less persuasive, however, the Court concludes that the ALJ did not err for the following reasons.

The ALJ rejected Bylewski's conclusion that Plaintiff could "work, albeit with practice and repetition," because the ALJ believed that conclusion was "inherently neither valuable nor persuasive in accordance with 20 C.F.R. § 404.1520b(c)." (Doc. 13 at 100). Under that regulation, the ALJ need not provide any analysis of an opinion that "would direct our determination or decision that you are or are not disabled . . ." because such an opinion is on an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3).

Plaintiff appears to argue that Bylewski's opinion — or her status as Plaintiff's job coach — demands a finding that Plaintiff is disabled. The ALJ correctly concluded that such an opinion is on an issue reserved for the Commissioner. To require the ALJ to conclude that Plaintiff was disabled because she hired a job coach, or because her job coach believed she could work with "practice and repetition," would be to allow the opinion of the job coach to "direct

[the agency's] determination . . . that you are or are not disabled . . . ." *Id.*[4] The Court concludes that Plaintiff's second objection is without merit.

**Conclusion**

This Court, having conducted de novo review of Plaintiff's objections and having found no clear error in the remainder of the Report and Recommendation, ACCEPTS the Report and Recommendation affirming the decision of the Commissioner (Doc. 20). In accordance with that recommendation, judgment is entered in favor of the Commissioner for the reasons stated by the Magistrate Judge, and the Report and Recommendation is incorporated herein by reference. (Id.).

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 6/14/22

---

[4] One of Plaintiff's case citations to the contrary contains testimony from a Vocational Expert who opined that requiring a job coach would mean that a claimant could not perform "competitive work." *Dees v. Comm'r of Soc. Sec.*, 2020 WL 61082, at *8 (N.D. Ohio Jan. 6, 2020). Even if that line of testimony could be understood as a holding in the case, it is not relevant here. To the contrary, the evidence showed that the job coach eventually simply picked Plaintiff up from volunteer work, and the ALJ was entitled to reject the job coach's opinion about accommodated work under 20 C.F.R. § 404.1520b(c) as discussed above.